UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

TIMOTHY MURINGAI,

        Plaintiff,

v.

FRITO-LAY, INC.

        Defendant.

Case No. 2:12-cv-1086
JUDGE EDMUND SARGUS, JR.
Magistrate Judge Norah McCann King

## OPINION AND ORDER

This matter is before the Court on Defendant's Motion for Summary Judgment. (ECF No. 25.) For the reasons that follow, the Court **GRANTS** Defendant's motion.

### I.

Defendant Frito-Lay, Inc. operates various distribution centers that deliver products to retail stores across designated geographical regions. At these centers, Frito-Lay employs Route Sales Representatives ("RSR") who transport product, deliver product, and complete sales at retail stores. There are three types of RSRs: a Lead RSR ("Lead") with a single, permanent route five days a week, a Co-Lead RSR ("Swing") who supports two Leads on each of their two days off and works a fifth day on one or both of the routes, and a Route Sales Associate ("RSA") who supports Leads or Swings during illness or vacation. Frito-Lay services large format stores, such as Giant Eagle grocery stores, and small format stores, such as Speedway gas stations.

RSRs are subject to a four-step disciplinary process explained in Frito-Lay's Employee Handbook. The disciplinary procedure progresses from a written reminder, to a written warning, to a final written warning, to an appealable termination. A disciplinary level is removed from an

employee's record nine months after each occurrence, unless there is an additional occurrence within that nine-month period.

Plaintiff was hired by Frito-Lay as an RSA in August 2006. He was promoted to Swing in December 2006 and, despite one written reminder for poor service in his record, he was promoted to Lead in November 2007. Plaintiff worked a route that serviced five large format stores.

In 2010, Plaintiff received several disciplinary actions: (1) January 22, 2010 for improper backing of his truck, (2) February 16, 2010 for out-of-date product; (3) June 17, 2010 for out-of-date product; and (4) July 23, 2010 for stale product and other damage.

On February 11, 2011, Plaintiff was permanently barred from a Kroger grocery store, one of the five large format stores his route serviced. The store manager at the Kroger permanently barred Plaintiff from the store, which is an occurrence that occasionally happens to Frito-Lay RSRs. In accordance with its Handbook, Frito-Lay disciplined Plaintiff with a Step 3 Written Warning and demoted him to an RSA position. Plaintiff was permitted to bid on other routes in an effort to obtain another RSR position.

On March 10, 2012, Plaintiff received a traffic citation for running a red light, was convicted of that offense, and had his license suspended. Frito-Lay discovered that Plaintiff had received the citation when it was running its routine annual licensure review. On April 29, 2013, Frito-Lay issued a Step 3 Final Written Warning to Plaintiff for his failure to report the traffic citation. Frito-Lay requires all of its route drivers to "notify their manager, in writing, of any traffic-related violation . . . on the next scheduled work day and before driving a Frito-Lay vehicle." (Pl.'s 6/10/14 Dep. at 27–28 and Dep. Ex. A). Frito-Lay informed Plaintiff:

> Tim, this is critical that all employees comply with the requirements in the Fleet Safety Handbook, which includes reporting all violations. Additionally, as a

2

>DOT qualified driver, you will be required to complete refresher training in order to return to your driving position.

*Id.*

On October 19, 2012, Plaintiff filed this action in the Franklin County Ohio, Court of Common Pleas. In his complaint, Plaintiff alleges that Frito-Lay discriminated against him because he is an African-American in violation of Ohio's Civil Rights statute. *See* Ohio Rev. Code § 4112.02. Plaintiff alleges three counts of race discrimination. The first count is based upon his demotion to RSA when he was permanently banned from one of the large format stores his route serviced. The second is based on alleged "unwarranted disciplinary action" when Plaintiff's conduct was "no different than non-African American employees [who] did not receive such discipline." (Compl.; ECF No. 3 at 2.) And, Plaintiff's third count of race discrimination is based upon Frito-Lay's alleged failure "to adequately maintain the Plaintiff's assigned truck, resulting in a reduction in income and a hazardous working environment." *Id.* at 3. On November 26, 2012, Frito-Lay removed the action to this Court based upon diversity jurisdiction. *See* 28 U.S.C. §§ 1332, 1441.

On July 23, 2013, Frito-Lay suspended Plaintiff for failure to keep proper route documentation. His discipline provides:

>You have been given multiple chances over the past several weeks to bring your records into compliance with the Frito-Lay RSR Handbook, which states, "Record Keeping Copies of all sales documents should be kept by you for at least one fiscal year. Paperwork should be retained at the designated Frito-Lay location specified by the Zone Business Team." (p. 35)
>
>At this point, our investigation is complete as you stated do not have any additional paperwork to provide. While you are in violation of the Employee Handbook, in lieu of progressive discipline, we are providing you with one final opportunity to improve your performance, subject to the terms below.
>
>[Listing expectations to follow company documentation policies and directing Plaintiff to additional support and training.]

3

>        Finally, this document will act as a one-time, non-precedent setting "Last Chance Agreement." Frito-Lay shall have no obligation to offer employees a last chance agreement in the future. This document will be effective for nine (9) months from today, *during which time you will be on disciplinary probation. Any action, behavior or performance, which would result in a step of corrective action, per the Employee Handbook, will result in immediate termination of your employment.*
>
>        I have confidence that you will be able to improve your performance and I am available to support you in meeting your job accountabilities. Please let me know if you have any questions, concerns or obstacles concerning these expectations.

(Pl's 6/10/14 Dep. at 27–28 and Dep. Ex. B) (emphasis added).

On October 29, 2013, Frito-Lay terminated Plaintiff for violation of the Handbook and the Last Chance Agreement:

>        This letter serves as notice of the termination of your employment with Frito-Lay, effective immediately. This action is taken consistent with the Frito-Lay Employee Handbook RSR Edition. On 11/16/12 you received Step 2 Written Warning for job performance and excessive stale product in the market. On 4/29/13, you received Step 3 Final Written Warning for failing to report a traffic citation. On 8/6/13, you received and agreed to a Last Chance Agreement, when you did not have complete documentation of your route. Additionally, you have received several opportunities to receive feedback and understand expectations.
>
>        During recent weeks, you have violated the Fito-Lay Employee Handbook again with the following violations:
>
>>        1. You failed to complete a physical inventory of your route in Period 10, 2013. This is a violation of the National Inventory Policy on pp. 39-40 of the handbook. Specifically, all employees are required to perform a period ending physical inventory on the last day worked of the period. Additionally, before the 2012 Policy was effective, it has always been the responsibility of all employees to do an inventory during each period.
>>
>>        2. You have multiple issues with cash variance and failing to submit cash timely. On October 10, it was discovered that you had a cash variance of $2706.45. Upon further investigation, you admitted to having forgotten to submit some of the cash. Additionally, there was an instance of a money order from Whitehall Carryout purchased on 9/6/13 when the product was delivered eight days prior. You stated that you collected the

4

>money order from the account at a later date. Per the handbook on p. 35, "You are responsible for . . . daily remittance of all Company cash and receipts."
>
>>a. The National Cash Policy is found on pp. 36-37 of the Handbook: "Pocket Charges - RSRs must collect all payments from our customers at the time of Sale. RSRs cannot hold Sales for any period of time, and then collect payments at a later date. All charge customer sales tickets must be acknowledged at the time of sale - not before or after the date of sale. Any RSRs failing to comply with this policy will be subject to the corrective action process up to and including termination."
>>
>>b. Currently you have another cash issue from 9/23/13 in the amount of $310.83 from the same account, Whitehall Carryout.
>>
>>c. There was also a cash variance from 10/9/13 in the amount of $1994.62, which was submitted late per the policy.
>
>Tim, the above actions are violations of the Frito-Lay Employee Handbook as well as the Last Chance Agreement to which you were aligned. You have received many opportunities to correct your performance deficiencies. Your employment is terminated immediately. Please refer to the attached sheet for information regarding continuation of benefits.

*Id.* at Ex. C.

On November 28, 2013, Plaintiff amended the complaint in this action to include the allegation that his termination was based upon race discrimination in violation of the Ohio Revised Code. (Am. Compl.; ECF No. 16.) Frito Lay has filed a Motion for Summary Judgment directed at all of Plaintiff's claims, which is ripe for review. (ECF Nos. 25, 28, 31.)

## II.

Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may therefore grant a motion for summary judgment if the nonmoving party

5

who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record which demonstrate "the absence of a genuine issue of material fact." *Id.* at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. *See also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (the requirement that a dispute be "genuine" means that there must be more than "some metaphysical doubt as to the material facts"). Consequently, the central issue is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234-35 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251-52).

### III.

Federal case law interpreting and applying Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, is generally applicable to cases involving Ohio Revised Code Chapter 4112. *Ohio Civ. Rights Comm. v. David Richard Ingram, D.C., Inc.*, 69 Ohio St.3d 89 (1994); *Plumbers & Steamfitters Joint Apprenticeship Commt. v. Ohio Civ. Rights Comm.*, 66 Ohio St.2d

6

192 (1981). To establish a discrimination claim under Title VII or the Ohio Revised Code in a circumstantial evidence case such as this one, the burden shifting framework first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and refined by *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1980), applies. *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572 (6th Cir. 2000). Under that paradigm, a plaintiff must set forth a prima facie case of discrimination. *Hartsel v. Keys*, 87 F.3d 795, 800 (6th Cir. 1996). Once the *prima facie* case is made, a defendant may offer any legitimate, nondiscriminatory reason for the employment action, which the plaintiff may rebut by evidence of pretext; however, the burden of proof always remains with the plaintiff. *Id.* (citing *St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993)).

### A. Plaintiff's Prima Facie Case

To establish a prima facie case of discrimination, a plaintiff must show "(1) that he is a member of a protected group, (2) that he was subject to an adverse employment decision, (3) that he was qualified for the position, and (4) that he was replaced by a person outside of the protected class . . . . [t]he fourth element may also be satisfied by showing that similarly situated non-protected employees were treated more favorably.'" *Clayton v. Meijer, Inc.*, 281 F.3d 605, 611 (6th Cir. 2002) (quoting *Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1246 (6th Cir. 1995)). Frito-Lay argues, *inter alia*, that Plaintiff cannot establish his prima facie case because he cannot show that similarly situated non-protected employees were treated more favorably. This Court agrees.

"It is well established that [a plaintiff] may obtain relief under Title VII, even if he engaged in serious misconduct, provided that white employees who engage in the same conduct were either not disciplined or not disciplined as severely." *Clayton v. Meijer, Inc.*, 281 F.3d at

7

611 (citing *McDonnell Douglas*, 411 U.S. at 804). The "employees to whom the plaintiff seeks to compare himself must 'have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Id.* (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)).

During written discovery in this action, Frito-Lay sought information on any individual Plaintiff intended to use as a comparator. In written responses to Frito-Lay's discovery requests and in his depositions, Plaintiff identified five individuals: KC Van Voorhis, Gina Blythe, Brian McQuane, Rod Enochs, and Tara O'Brien. In its summary judgment motion, Frito-Lay set forth admissible evidence showing why these five individuals were not proper comparators to Plaintiff because of a variety of reasons including that they were not treated differently, did not hold the same position and/or report to the same supervisors, did not have comparable disciplinary histories, and/or did not engage in comparable conduct or conduct of comparable seriousness. In his memorandum in opposition to Frito-Lay's motion, Plaintiff does not address any argument or evidence offered by Frito-Lay as to these individuals. Indeed, Plaintiff abandons completely his reliance on these individuals as comparators. Instead, Plaintiff submits an affidavit in which he sets forth several other individuals whom he contends are similarly situated. Specifically, Plaintiff avers:

> 4. When I was removed from a store, I was demoted in my employment status. However, Frito-Lay does not apply this demotion practice to all employees. Bill Smart (Caucasian) RSR, was removed from the retailer Bottle Cap, on James Road & Livingston Avenue, in Columbus, Ohio. He was assigned to another store, without a demotion. Carla Brown, Kroger Manager, wanted Bill Carr (Caucasian) RSR, removed from the Kroger Store on Bethel Road, in Columbus, Ohio. Instead of demoting Mr. Carr, he was reassigned to the Kroger Store on North Broadway, in Columbus, Ohio. Terry Albert (Caucasian) RSR was removed from 5 stores (Circle K, Speedway, Bubba's Market in Orient, Family Dollar in Grove City, Ohio, and (I believe) K Mark on Stringtown Road, without receiving a demotion. Steve Martin (Caucasian) RSR, was removed from

8

> the Discovery Building on 161 in New Albany, Ohio, without receiving a demotion.
>
> 5. Frito-Lay had a practice of subjecting me to discipline for minor allegations. However, many times, it would not provide discipline to Caucasian employees for noteworthy allegation. David Patterson (Caucasian) employee, used Frito-Lay monies to purchase drugs. He kept his job. Tami Loflin (Caucasian) employee, came to work intoxicated and did not receive discipline. Roxanne Furber (Caucasian) employee, failed to come to work for 7 days because she went to pick up her grandchildren in Florida. She did not receive discipline. Normally an employee is terminated, once they fail to appear to work for 3 days.

(Pl.'s Mem. in Opp. to Def.'s Mot. for Summ. J., Ex. A, Pl.'s Aff. ¶¶ 4, 5; ECF No. 28-1.)

As to Plaintiff's affidavit, Frito-Lay maintains that it fails to discharge his prima facie burden of production because it is not competent, admissible evidence and it contradicts Plaintiff's prior deposition testimony without explanation. However, Frito-Lay argues that even if the affidavit offered admissible evidence regarding these new comparators, it is still entitled to summary judgment because Plaintiff has not shown that these newly named comparators are similarly situated to Plaintiff. Defendants' arguments are well taken.

First, as Frito-Lay points out, Plaintiff has failed to show "how he has personal knowledge or is otherwise competent to testify regarding" the new comparators referred to in his affidavit. (Def.'s Reply at 3; ECF No. 31.) Plaintiff offers no foundation at all as to these new allegations. Frito-Lay correctly contends that Plaintiff's failure in this regard "is fatal because Rule 56 plainly requires affidavits to be "made on personal knowledge . . . and show that the affiant . . . is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4); *see also* Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.").

Second, it is well settled "that a party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement (by,

9

say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity." *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999). Frito-Lay highlights Plaintiff's deposition testimony in which he confirms that he disclosed every reason he believed that his demotion was racially motivated yet had not mentioned any other these new comparators. Further, in his discovery responses Plaintiff provided the names of all individuals upon whom he intended to rely or call as witnesses in this case and none of the new comparators were disclosed. Frito-Lay deposed every individual Plaintiff named in discovery who he claimed was treated more favorably than he was treated.

While the Court is not wholly convinced that Plaintiff's deposition testimony "flatly" contradicts his later affidavit testimony since Plaintiff may have come to know about the incidents in which these comparators were involved after his depositions were taken, Plaintiff was a minimum required to supplement his discovery responses under Federal Rule of Civil Procedure 26 to provide Frito-Lay notice of these new witnesses. *See* Fed. R. Civ. P. 26(e) (requiring supplementation "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing"). This Plaintiff failed to do. The first mention of Bill Smart, Bill Carr, Terry Albert, Steve Martin, David Patterson, Tami Loflin, and Roxanne Furber was in Plaintiff's affidavit provided in response to Frito-Lay's Motion for Summary Judgement. *See also Guiffre v. Local Lodge No. 1124, United Steelworkers of Am.*, 940 F.2d 660 (6th Cir. 1991) ("A party may not rely on wholly new allegations of wrongdoing to resist a motion for summary judgment. . . . Discovery by [the plaintiff] did not focus on investigating them, thereby providing the

10

defendants with notice that he intended to pursue them. Having received no notice of them, the defendants had no opportunity to investigate them when they conducted their own discovery.").

Finally, even if these new comparators were properly before the Court, the record does not show that they are similarly situated to Plaintiff in all relevant respects. Indeed, the record reflects the opposite, *e.g.*, discipline to individuals for missing work, attending work intoxicated, buying illegal drugs, and removal from small format stores. Plaintiff has simply failed to show that any of the individuals he names engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or Frito-Lay's treatment of them for it. Thus, Plaintiff has not made a sufficient showing necessary to establish the existence of an element that is essential to his case.

## B. Frito-Lay's Legitimate Nondiscriminatory Reason and Pretext

Even if the Court had found that Plaintiff set forth a prima facie case, Frito-Lay would still be entitled to summary judgment because it has offered a legitimate nondiscrimatory reason for its actions and Plaintiff cannot show the reason to be pretextual for race discrimination. That is, Frito-Lay indicates that it disciplined Plaintiff and terminated his employment because he violated work rules. This is a legitimate, nondiscriminatory reason for Frito-Lay's actions. "It is important to note that the defendant need not *prove* a nondiscriminatory reason for [taking an adverse action against the plaintiff], but need merely *articulate* a valid rationale." *Hartsel,* 87 F.3d at 800 (citing *Hicks,* 509 U.S. at 514). Because Frito-Lay has articulated a valid rationale for its actions, the burden shifts to Plaintiff to show that Frito-Lay's proffered reason is a pretext for unlawful discrimination.

The Sixth Circuit has explained that a plaintiff can show pretext in three interrelated ways: (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not

11

actually motivate the employer's action, or (3) that they were insufficient to motivate the employer's action. *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009) (citing *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 460 (6th Cir. 2004); *see also Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994), overruled in part by *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000). "To carry h[is] burden in opposing summary judgment, [the plaintiff] must produce sufficient evidence from which a jury could reasonably reject [the defendant's] explanation of why it fired h[im]." *Id.* (citing *Mickey v. Zeidler Tool and Die Co.*, 516 F.3d 516, 526 (6th Cir. 2008)). The Sixth Circuit, however, has noted "it is important to avoid formalism in [the] application [of this three-part test], lest one lose the forest for the trees." *Chen*, 580 F.3d at 402, n. 4. The court explained:

> Pretext is a commonsense inquiry: did the employer fire the employee for the stated reason or not? This requires a court to ask whether the plaintiff has produced evidence that casts doubt on the employer's explanation, and, if so, how strong it is. One can distill the inquiry into a number of component parts, and it can be useful to do so. But that should not cause one to lose sight of the fact that at bottom the question is always whether the employer made up its stated reason to conceal intentional discrimination. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) ("[A] reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason."); *Forrester*, 453 F.3d at 417 ("If [the proffered reason] is not the true ground, the employer may still be innocent of discrimination; he may for example have lied to conceal a reason that was discreditable but not discriminatory.) (citations omitted).
>
> At the summary judgment stage, the issue is whether the plaintiff has produced evidence from which a jury could reasonably doubt the employer's explanation. If so, her prima facie case is sufficient to support an inference of discrimination at trial. *Hicks*, 509 U.S. at 511. But summary judgment is proper if, based on the evidence presented, a jury could not reasonably doubt the employer's explanation. *See Reeves v. Sanderson Plumbing Prod.., Inc.*, 530 U.S. 133, 148 (2000) ("[A]n employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.").

12

*Id.* (parallel citations omitted); *see also Tingle v. Arbors at Hilliard*, 692 F.3d 523, 530 (6th Cir. 2012) ("But we have never regarded those categories as anything more than a convenient way of marshaling evidence and focusing it on the ultimate inquiry: 'did the employer fire the employee for the stated reason or not?' As we have stated, 'at bottom the question is always whether the employer made up its stated reason to conceal intentional [discrimination].' ").

In an attempt to meet his burden of showing that Frito-Lay's proffered reasons for subjecting him to the complained of adverse actions were a pretext for unlawful discrimination, Plaintiff submits his affidavit. (Pl.s' Mem. in Opp. to Def's Mot. for Summ. J., Ex. A.; ECF No. 28-1.) In that affidavit, Plaintiff avers that Frito-Lay (1) was complicit in Kroger permanently banning him from its store, (2) provided Plaintiff poor support service, (3) failed to timely repair Plaintiff's work vehicle, and (4) monitored him more closely than similarly situated, non-protected category coworksers. Specifically, Plaintiff avers:

> 1. I was told by Kroger manager Mr. White, that Mike Popadak (Caucasian), Human Resources Manager at Frito-Lay, had contacted Mr. White for assistance in getting me removed from the Kroger Store on Parsons Avenue, in Columbus, Ohio. Furthermore, I was told by Cathy Riddle, the manager at the Kroger Store on Eakin Road, in Columbus, Ohio, that Mr. Popadak had contacted her also, for assistance in getting me removed from her store, for no apparent reason.
>
> . . . .
>
> 3. As a result of the continuous acts of discrimination, I contacted Pamela Culpepper, Global Human Resources Director for PepsiCo (parent company of Frito-Lay), in November 2012. As a result of my action, local management retaliated[1] against me. Such retaliation included, provided poor support services

---

[1] The Court accepts Plaintiff's averments as intended to support his claim that he was discriminated against. Plaintiff has no retaliation claim before the Court and a "plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment." *Neumann v. Plastipak Packaging, Inc.*, 1:11-CV-522, 2011 WL 5360705 (N.D. Ohio Oct. 31, 2011) (quoting *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996)); *see also Wilburn v. Dial Corp.*, 724 F. Supp. 521, 525 (W.D. Tenn. 1989) ("To the extent, if any, this constitutes an allegation of retaliation, as noted by the defendant in its subsequent response, it will not be considered by this court in ruling on the defendant's motion for summary judgment due to the fact that such an allegation is outside the scope of the pleadings and the plaintiff's right to sue letter.").

13

> for my sales activities, failing to service my delivery truck appropriately (it had 4 break downs within a short period of time, as a result of poor mechanical servicing), providing unwarranted close monitoring of my actions and subjecting me to unwarranted discipline. Such actions were not given to Caucasian employees.

(Pl.'s Mem. in Opp. to Def.'s Mot. for Summ. J., Ex. A, Pl.'s Aff. ¶¶ 1, 3; ECF No. 28-1.)

Initially, the Court notes that, similar to his testimony regarding the new comparators discussed *supra*, Plaintiff's averments here regarding White, Popadak, and Riddle were not properly disclosed during discovery and are mentioned for the first time in his affidavit filed in support of his memorandum in opposition to Frito-Lay's summary judgment motion. However, even if Plaintiff had properly disclosed these individuals, his averments are based upon hearsay that may not be considered on summary judgment. Fed. R. Evid. 801(c); *Jacklyn v. Schering-Plough*, 176 F.3d 921, 927 (6th Cir. 1999); *Willoughby v. Allstate Ins. Co.*, 104 Fed. App'x 528, 530 (6th Cir. 2004) (affirming summary judgment on race discrimination plaintiff's claims because alleged comparators "were evidenced only by inadmissible hearsay").

As to Plaintiff's testimony regarding poor support services, failing to timely repair his truck, and monitoring him more closely than others, it fails to cast doubt on Frito-Lay's explanation for its actions. Frito-Lay puts forth uncontroverted evidence showing other drivers' requests for "an extra set of hands" during busy days are frequently denied, (Steve Harris[2] Aff. ¶ 10, Ex. B; Rico Martin[3] Aff. ¶ 9, Ex. C), and having repairs of a work vehicle take extended period of time is a problem all drivers experience (Steve Harris Aff. ¶ 9, Ex. B; Rico Martin Aff. ¶ 8, Ex. C). Finally, as to Plaintiff's final contention, that he was monitored more closely than other employees, Plaintiff offers nothing but his unsubstantiated speculation which is insufficient to show pretext. *Brown v. Ohio State Univ.*, 616 F. Supp. 2d 740, 758 (S.D. Ohio 2009) *aff'd*,

---

[2] Mr. Harris has been employed by Frito-Lay since 2005 and is currently an RSR.
[3] Mr. Martin has been employed by Frito-Lay since 2005 as is currently an RSR.

14

385 F. App'x 486 (6th Cir. 2010) ("speculation ungrounded in fact is insufficient to establish pretext") (citing *Hartsel,* 87 F.3d at 801). Therefore, no jury could reasonably doubt Frito-Lay's explanation for taking the complained of adverse employment actions against Plaintiff.

## IV.

For the reasons set forth above, the Court concludes that Plaintiff failed to raise any genuine issue of material fact as to his claim that the Frito-Lay treated him discriminatorily based upon his race. Accordingly, the Court **GRANTS** Defendant's Motion for Summary Judgment. (ECF No. 25.) The Clerk is **DIRECTED** to **ENTER JUDGMENT** in accordance with this Opinion and Order.

**IT IS SO ORDERED.**

10-28-2014
**DATE**

EDMUND A. SARGUS, JR.
**UNITED STATES DISTRICT JUDGE**